## Jennings Bros. & Co., Ltd., Appellants, *v.* Beale.

*Equity—Jurisdiction—Trespass on lands in another county.*

Where a court of equity has jurisdiction of a person, it may issue an injunction to prevent trespass upon lands in another county.

*Equity jurisdiction—Question of title.*

Where, on a bill for an injunction to restrain a trespass upon real estate, the deed under which plaintiff claims is recited in the chain of title and is admitted by the pleadings, and the only question is, whether or not it confers a right to mine claimed by plaintiff, no such question of title arises as may deprive a court of equity of jurisdiction over the case.

*Injunction—Continuous trespass.*

Where a bill in equity alleges the exclusive right in plaintiffs to mine coal in certain lands, and avers that defendant is taking it out and shipping it by the carload in such quantities that he will soon exhaust the mines, the court may restrain by injunction the continuous trespass alleged

*Deed—Exclusive grant—Right to mine coal.*

A deed of bargain and sale, with words of inheritance, granted " all those five certain lots or pieces of ground," etc., and " all the right, title, interest and claim of the parties of the first part of, in, to and out of all the gas from a certain well, on all that certain lot," etc., and " also the perpetual right to mine, dig and carry away coal, in and from all the veins of coal in and under all the following described tracts of land." A royalty was reserved to the grantor on all coal mined. *Held*, that the omission of the word " all " before coal, and the reservation of a royalty, showed that it was not the intention of the parties to convey the coal absolutely, or to exclude the grantor from mining.

Argued Oct. 24, 1893.    Appeal, No. 94, Oct. T., 1893, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., June T., 1892, No. 580, dismissing bill in equity against Joseph G. Beale. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and THOMPSON, JJ.

Bill in equity to restrain mining of coal.

From the bill, it appeared that plaintiff claimed an exclusive right to mine coal under a deed from defendant and his wife. The material portion of the deed is as follows :

" This indenture, made the 13th day of March, in the year of our Lord one thousand eight hundred and eighty-six, between Joseph G. Beale and Margaret J., his wife, of the borough of Leechburg, in the county of Armstrong, and state of Pennsyl-

vania, parties of the first part, and Benjamin F. Jennings, trustee, of the city and county of Allegheny, and state aforesaid, party of the second part:

" Witnesseth : That the said parties of the first part, for and in consideration of the sum of forty thousand dollars, lawful money of the United States of America, unto them well and truly paid by the firm of Jennings, Beale & Company, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, convey and confirm unto the said party of the second part, his heirs and assigns forever, all those five certain lots or pieces of ground situate in the borough of Leechburg [describing them] :

" Also, all the right, title, interest and claim of the said parties of the first part of, in, to and out of all the gas from a well on all those certain lots or pieces of ground situate in the township of Allegheny, in the county of Westmoreland, and state aforesaid, separately bounded and described as follows, to wit, [describing them] :

" Also, all the right, title, interest and claim of the said parties of the first part of, in, to and out of all the gas from a certain well on all that certain lot or piece of ground situate in the borough of Leechburg, county of Armstrong, and state aforesaid, bounded and described as follows, *to wit* [describing them] :

" [Also, the perpetual right to mine, dig and carry away coal in and from all the veins of coal in and under all the following described tracts of land] [describing them] :

" Said party of the second part, his executors, *administrators* or assigns to pay to the said parties of the first part, their heirs, executors, administrator or assigns a royalty of one quarter of a cent per bushel on all the coal mined by virtue of the foregoing conveyance."

The bill prayed for an injunction to restrain defendant from mining, digging and carrying away coal, and for general relief. Defendant demurred to the bill.

The court below filed the following opinion :

" The bill in this case is filed, asking an injunction to restrain defendants from taking coal from certain mines under lands

in Armstrong county, Pennsylvania, to which plaintiffs claim to have the exclusive right by grant from defendant and wife. To this the defendant has filed a general demurrer, and for cause of demurrer makes several specifications.

"The first, second, third, fourth and fifth specifications allege the introduction of irrelevant matter in several paragraphs of the bill without special designation of the matter complained of. An examination of the bill does not disclose to us anything clearly irrelevant. The history of the transaction is necessary to show plaintiffs' title and the relation of the parties when the conveyance was made. But aside from this, if the bill were in this respect objectionable, it is not cause of demurrer: Daniell's Ch. Pr. 350. The proper remedy is by motion to strike out the irrelevant matter.

"The sixth and eighth specifications raised the objection that the court is without jurisdiction, because the land, as to which protection is sought, is wholly in Armstrong county, beyond the territorial jurisdiction of the court. The bill was served personally on the defendant in Allegheny county, and, so far as the record shows, he may be a resident of this county. The decree asked is personal. 'When the court has jurisdiction of the person, it may issue an injunction to prevent trespass upon lands in another county:' Munson v. Tryon, 6 Phila. 395. This rule applies to all proceedings not affecting title: Danl. Ch. Pr. 1033, note 5.

"The sixth specification also contains the suggestion that the construction of the deed referred to in the bill, and upon which plaintiffs claim title, 'is a matter of law, properly belonging to the common law courts, and must therefore be settled in proceedings at law.' This is true where the title of plaintiff is denied: N. P. Coal Co. v. Snowden, 42 Pa. 488; Ferguson's Ap., 117 Pa. 426. No equity shown: Grubb's Ap., 90 Pa. 228. But it is not true when the deed is recited in the chain of title, is admitted by the pleadings, and the only question is, whether or not it confers the right claimed by plaintiff under it. If the case were being tried in a court of law, this duty would devolve upon the court, and if there were no other question, the opinion of the court would be conclusive. There is no reason why this duty may not be as well performed by a chancellor sitting in a court of equity as by the same person

sitting as a judge in a court of law. Such power has been frequently exercised: Funk v. Haldeman, 53 Pa. 229; Alden' Ap., 93 Pa. 182.

" The 7th specification is that the bill does not show irreparable injury. The bill alleges the exclusive right in plaintiffs to the coal in the lands referred to, and that defendant is taking it out and shipping the same by the car load by rail in such quantities that he will soon exhaust all said mines and leave them without fuel for their steel mills, which was the chief inducement to the purchase. Continuous trespass of such character has frequently been restrained by injunction: Scheetz's Ap., 35 Pa. 88; Allison's Ap., 77 Pa. 221; Duffield v. Hue, 136 Pa. 602.

" The only other question suggested and the only real question in the case is contained in the second specification as follows: ' The second paragraph contains abstracts of a deed, irrelevant to the cause of complaint, except the third subdivision of the second paragraph [inclosed in brackets], the language of which negatives the right of the plaintiffs to interfere with or restrain the defendant or any one else from mining coal under the land referred to.'

" By the bill it appears that the property in dispute belonged to the defendant, Joseph G. Beale, who was the owner of a rolling mill in Leechburg. On January 29, 1886, said Beale and Benj. F. Jennings formed a partnership for the purpose of manufacturing steel, under the firm name of Jennings, Beale & Co. On March 13, 1886, Jos. G. Beale and wife conveyed to Benj. F. Jennings, his heirs and assigns, in trust for said firm: 1st. ' Five lots of ground in the borough of Leechburg, in the county of Armstrong, on which was erected the said West Penn Steel Works.' 2d. ' All the gas from certain wells upon the property therein described.' 3d. ' Also the perpetual right to mine, dig and carry away coal in and from all the veins of coal in and under all the following described tracts of land.' . . . Said party of the second part, his executors, administrators and assigns to pay to the said parties of the first part, their heirs, executors, administrators and assigns, a royalty of one fourth of one cent per bushel on all coal mined by virtue of the foregoing conveyance.'

" The plaintiffs claim that this conveys to them the exclu-

sive right to mine, dig and carry away the coal under the lands described in the deed, and that the acts of defendant are in derogation of their rights.   If their claim is well founded they are entitled to the relief prayed for.

"It has been held in many cases that an estate may exist as to minerals separate from the ownership of the surface ; that the estate of each owner is corporeal and that the conveyance in fee of the minerals is perfected in the grantee without livery of seizin or other investiture except delivery and recording of the deed : Caldwell v. Fulton, 31 Pa. 475.   This case has been recognized and followed in many cases, some of which are cited in Lillibridge v. Coal Co., 143 Pa. 293.

"This case decides further that no particular form of conveyance is required, but ' when the intent is to give the entire usufruct and power of disposal, the legal title must be held to pass.'

"If the claim of plaintiffs is good, the grant being exclusive and perpetual, they own the coal in fee absolute.   Do the deeds referred to convey to plaintiffs such an estate ?   Such interest is not expressly granted nor does it seem to be necessarily implied.   It is true that the grant must be construed most strongly against the grantor, but even against him the grant must receive a reasonable construction.

"The grant is included in a deed of bargain and sale with words of inheritance.   But this is appropriate to the conveyance of an incorporeal hereditament, as well as to the conveyance of a thing corporate.

"In considering the special grant of coal, it will be observed that it is in connection with the conveyance of other properties. As to these the terms of the grant are not the same.   First are conveyed several tracts of land as to which the words ordinarily used in conveyance of real estates are used, viz. : ' All those 5 certain lots or pieces of ground,' etc.   Second.  ' All the right, title, interest and claim of the parties of the first part of, in, to and out of all the gas from a certain well on all that certain lot,' etc.   Then comes the conveyance of the property in dispute, ' the perpetual right to mine, dig and carry away coal in and from all the veins of coal in and under all the following described tracts of land,' etc.

"It will be observed that in this clause is omitted the word

'all,' which is ordinarily used in conveyances of an absolute right, and is actually used as to the former grants in this deed, and resumed in this clause referring to the veins of coal and the lands under which they are found. It does not designate 'all' coal—it does not even define it by the use of the definite article 'the,' and there is not found anywhere in the deed words expressly excluding the grantor. This change of language is certainly very significant. It does not appear to be accidental and therefore must have been intended to show a change of purpose.

"But the condition of this grant is inconsistent with the intent to convey the coal absolutely and exclude the rights of the grantor. It provides for the payment of a royalty of one fourth of one cent per bushel on all coal mined by virtue of the conveyance. There is no time fixed for payment nor any covenant or condition requiring the grantees to mine. If the contention of the plaintiffs is right they may never mine any coal and the defendant might be deprived of his property without payment of the consideration. Plaintiffs claim that the consideration was contained in the price paid for the entire property, including the right to mine coal. But if the consideration was in part for this privilege, it still appears that a considerable portion of the consideration, about $250 to $300 per acre, was reserved, and at the option of plaintiffs may never become payable. It is not reasonable to suppose that the parties ever intended such result. The defendant had the power to make such an agreement, as was said in Grove v. Hodges, 55 Pa. 515, but 'a sale without consideration paid or to be paid will not be held to be intended by the parties unless the language of the instrument shuts us up to such conclusion:' Clement v. Youngman, 40 Pa. 341. But if any part of the consideration paid was applicable to this right or privilege it would not change the effect, as was said in Union Pet. Co. v. Bliven Pet. Co., 72 Pa. 181. 'The fact that $150 was in this case paid down in cash does not change the character of the grant.'

"Nor do we think that the circumstances of the parties adds any force to plaintiffs' claim. If the coal was necessary for the operation of plaintiffs' mills, they might have been satisfied with the right to take coal in conjunction with defendant, and, if they were not, would doubtless have employed unequivocal language to exclude him.

" The view we have taken of this conveyance is sustained by the authorities in similar cases.

" In Johnstown Iron Co. v. The Cambria Iron Co., 32 Pa. 241, the grant was ' the privilege of raising iron ore on his field at 25 cents per ton . . . . and to give the privilege to none else.' The court says : ' It was not a sale of all the ore in the land for a round sum, as in the case of Caldwell v. Fulton, 31 Pa. 475, but a privilege of raising iron ore at 25 cents per ton ; . . . such a right was not exclusive in the grantees, but was to be enjoyed in common with the grantor, his heirs and assigns.'

" In Clement v. Youngman, 40 Pa. 341, though the grant was ' the exclusive right to and privilege of searching for, digging, raising and carrying away all the iron ore and limestone ' from certain lands described—the grantee ' agreeing to pay to grantor, his heirs and assigns, at the rate of 20 cents per ton of clear ore,' it was held not to convey a corporeal hereditament, and principally because ' no equivalent was to be given until the ore should be taken, and there was no obligation even to take it.'

" In Gloninger v. The Franklin Coal Co., 55 Pa. 9, the grant was ' to said Edward Fell, his heirs, executors, administrators and assigns, the free right to dig coal at the coal bed under the foot of the mountain on my lot No. 22, etc.   This was held to be a mere license.

" The cases in which an exclusive right has been held to pass, clearly recognize these principles.

" In Caldwell v. Fulton, 31 Pa. 475, stress is laid upon the fact that the grantee had the right to take all the coal, and that the grantor had received all that he was entitled to receive if all were taken.   And the court refer to the distinction between that case and Chetham v. Williamson, 4 East, 469, in which the ' right to take coal or minerals ' was not a thing for which the consideration mentioned in the deed was given.   They were to be paid for when taken.   Doe v. Wood, 2 B. & Ald. 719, where the right to take tin was such as might be found within twenty years.   Lord Mountjoy's case, where the right was granted to take heath, turves, etc., necessary for making alum and copperas, and Grubb v. Bayard, 2 Wallace, Jr., 81, where the right was to ' dig, take and carry away all iron ore to be found within the bounds of a tract of land of the grantor, provided the grantee

should pay unto the grantor, his heirs and assigns, the sum of six pence for every ton taken from the premises.' As to this case the court say : ' This was held to be an incorporeal hereditament. It will be observed that there was no present consideration passed, nor was there a covenant to search for or take any ore. He might never take any. In that event, if the deed had been held a conveyance of the iron ore, there would have been a sale without a consideration.'

" In Funk v. Haldeman, 53 Pa. 229, a grant to take oil, though held to be an incorporeal hereditament, was held to be exclusive. This was placed not so much on the use of the words ' free and uninterrupted,' as upon the fact that the grantor had reserved the mineral rights in some portions of the land, and, in those granted, expressly reserved the right of tillage, which brought the case within the principle *inclusio unius exclusio alterius.* They distinguish it from Caldwell v. Fulton, in that ' there the grant was of all the coal in the land for a sum in solido.' In Sanderson v. Scranton, 105 Pa. 469, there was a lease of all the coal under a certain tract of land, with the right to mine the coal and remove the same. The minimum quantity to be mined each year was fixed, and to be paid for whether mined or not. See also Del. & L. R. R. Co. v. Sanderson, 109 Pa. 583.

" In Fairchild v. Dunbar Furnace Co., 128 Pa. 497, John Martin agreed to grant to Wm. J. Martin ' the right and privilege of digging all the ore on his place and lands, for which said Wm. J. Martin doth covenant and agree to pay to said John Martin $2,000.' The court says: ' It was not only the grant of the right to dig ore, it was a grant of the right and privilege to dig all the ore on his place and lands and for a sum in solido.'

" In Hope's Ap., 29 W. N. 365, Kingsley v. Hillside Coal & Iron Co., Ibid. 368, and Lazarus's Estate, Ibid. 372, agreements in form of lease were held to convey estates in the coal referred to because they granted the right to take all the coal, and provided payment for all.' The same suggestions will be found in Stoughton's Ap., 88 Pa. 202; Bronson v. Lane, 91 Pa. 153; Scranton v. Phillips, 94 Pa. 15, and other cases.

" In Grove v. Hodges, 55 Pa. 515, the distinction is marked. Garner sold to Irvin, for ' the consideration of twenty-five cents per ton, the right to mine, take and carry away the iron

ore' in certain land which was held to be a mere license. He subsequently granted to Michael J. Grove, his heirs, executors and assigns, all the iron ore in, upon, and under the same lands. This was held to be a conveyance in fee subject to payment of royalty. No consideration is given to the fact that the royalty was payable on the ore when taken out, for the reason perhaps that the contest was not with the grantor, but with another who had a mere license.

"It will be observed that in every case where it was held that an exclusive right was conveyed, the deed in express words granted all the mineral or provided for payment of all, and in nearly every case both. The deed in this case does not in terms or by necessary implication convey all the coal—nor exclude the grantor—nor provide for payment.

"The view we have taken of this contract is conclusive of the plaintiffs' right to the relief prayed for. 'The bill being founded not on a right in common, but on the exclusive right to the iron ore, and failing to establish that right they have no equity to demand the relief sought:' Johnstown Iron Co. v. The Cambria Iron Co., 32 Pa. 246.

"The demurrer must therefore be sustained and the bill dismissed. A decree will be drawn accordingly under our rules of practice."

*Error assigned* was decree, quoting it.

*S. T. Neill* and *W. K. Jennings*, for appellants.—Plaintiffs' grant in this case must be construed to be either a corporeal or an incorporeal hereditament in fee.

Plaintiffs' mining right was irrevocable: Huff v. McCauley, 53 Pa. 206; Bainbridge on Mines, 268.

The grant was in fee: Funk v. Haldeman, 53 Pa. 229. Exclusive: Bainbridge on Mines, 239; Doe v. Wood, 2 B. & Ald. 724; Clement v. Youngman, 40 Pa. 341; Caldwell v. Fulton, 31 Pa. 475; Harlan v. Lehigh Co., 53 Pa. 287.

Many grants of mineral estates which have been heretofore held to be leases are now held to be sales: Stoughton's Ap., 88 Pa. 198; Bronson v. Lane, 91 Pa. 153; Sanderson v. Scranton, 105 Pa. 474; Hope's Ap., 29 W. N. 365; Fairchild v. Dunbar Furnace Co., 128 Pa. 485; Gowan v. Christie, 5 Moak, 114

Plaintiffs' mining right was an appurtenance to the steel mill: Washburn on Easements, *8, § 7; Huff v. McCauley, 53 Pa. 209; Grubb v. Grubb, 74 Pa. 25; Huntington v. Asher, 96 N. Y. 604; Grubb v. Grubb, 101 Pa. 11; Klaer v. Ridgway, 86 Pa. 529; Huntington v. Asher, 96 N. Y. 604.

*M. F. Leason*, for appellee.—The court has no jurisdiction: North Penn. Coal Co. v. Snowden, 42 Pa. 488; Grubb's Ap., 90 Pa. 228; Caldwell v. Fulton, 31 Pa. 486; Grubb v. Bayard, 2 Wallace, Jr. 81; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 246; Grubb v. Guilford, 4 Watts, 224.

The doctrine of all the cases seems to be that, where the consideration is a round sum and paid, and a right to mine mineral is unlimited, a fee passes, and where the mineral is paid for by royalty and the grantee has not entered into any covenant to mine the minerals within a specified time, then the right conveyed is incorporeal, and the grantee acquires title only to such minerals as he mines, carries away and pays the royalty on.

The opinion of the court below is referred to as further argument.

PER CURIAM, November 6, 1893 :

All that can profitably be said on the questions presented by the specifications of error, in this case, will be found in the opinion of the learned judge of the common pleas, sustaining the demurrer and dismissing the bill. There appears to be no error in the decree, and it may be affirmed on said opinion.

Decree affirmed and appeal dismissed with costs, to be paid by appellants.