# Saltsburg Colliery Co., Appellant, *v.* Trucks Coal Mining Co.

*Deed—Consideration—Privilege in other land—Construction of deed—Construction by parties.*

1. Where, as part consideration for the purchase of a piece of land, the grantor gives to the grantee a privilege on or under another tract, the privilege will determine when the purpose for which it was granted has ended.

2. The fact that the words used to express a grant are not those commonly employed when a sale is intended, is a circumstance, although not conclusive, that only some less estate was intended to be conveyed.

3. In doubtful cases the words of a grant will ordinarily be so construed as to resolve the doubt in favor of the grantee.

4. Where, however, the parties to a document, before any dispute has arisen between them, consistently interpret the language in one way, this operates to resolve the doubt and is controlling in the construction of the paper.

*Appeals—Judgment n. o. v.—Disputed facts—Evidence.*

5. On an appeal from a judgment non obstante veredicto, all disputed facts, depending solely on testimony, must be resolved in favor of appellant.

Argued October 2, 1923.   Appeal, No. 2, Oct. T., 1924, by plaintiff, from judgment of Superior Court, April T., 1923, No. 129, affirming judgment n. o. v. of C. P. Armstrong Co., March T., 1921, No. 6, in favor of defendant, in case of Saltsburg Colliery Co. v. Trucks Coal Mining Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.   Reversed.

Appeal from Superior Court.   See 81 Pa. Superior Ct. 542.

Trespass for damages for coal mined from plaintiff's land.   Before KING, P. J.

The opinion of the Supreme Court states the facts.

Judgment n. o. v. for defendant.

Judgment affirmed by Superior Court.   Plaintiff appealed.

*Error assigned* was judgment, quoting record.

*A. J. Barron,* of *Alter, Wright & Barron,* with him *Floy C. Jones* and *R. L. Ralston,* for appellant.—The mining privilege contained in the deed of 1851 and the agreement of 1844 is an incorporeal hereditament: Caldwell v. Fulton, 31 Pa. 475, 483; Clement v. Youngman, 40 Pa. 341; Gloninger v. Coal Co., 55 Pa. 1; Grubb v. Grubb, 74 Pa. 25; Funk v. Haldeman, 53 Pa. 229; Carnahan v. Brown, 60 Pa. 23; Jennings Bros. & Co. v. Beale, 158 Pa. 283.

The mining privilege was revocable and has been revoked: Newmoyer v. Andreas, 57 Pa. 446; Reagan v. Curran, 226 Pa. 265.

The mining privilege is indivisible in its nature and has been extinguished by the acts of the heirs and assigns of the grantees: Funk v. Haldeman, 53 Pa. 229.

Under a certain uncontradicted state of facts, the law will pronounce the conduct of a party to be an abandonment, whatever may have been his intention: Atchison v. McCulloch, 5 Watts 13; Barnhart v. Lockwood, 152

Pa. 82; Patterson v. Graham, 164 Pa. 234; Calhoon v. Neely, 201 Pa. 97; Cole v. Taylor, 8 Pa. Superior Ct. 19.

The Superior Court was misled in following Caldwell v. Fulton, supra.

*H. A. Heilman,* with him *H. L. Golden,* for appellee.— The case of Caldwell v. Fulton, 31 Pa. 475, is on all fours with the present case, and the principles laid down by this court in that are applicable to the present case.

The land from which the coal is to be taken has been definitely located and described: Safe Dep. & T. Co. v. Bovaird & Seyfang, 229 Pa. 295; Little v. Greek, 233 Pa. 534.

It is a rule of law that a deed must be construed most strongly against the grantor: Advance Industrial Supply Co. v. Metallic Co., 267 Pa. 15; Miles v. N. Y., Susquehanna, etc., Coal Co., 250 Pa. 147.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1924:

Prior to May 16, 1844, William H. Richardson & Co. were engaged in the mining of salt from deposits underlying about six acres of land owned by them; and, in carrying on the business, were using coal procured from an adjoining 194 acres of hill property, also owned by the firm. On that day, they entered into an agreement with Bridget Trucks, George Trucks and Thomas Trucks, who desired to purchase the business and continue the production of salt, to convey to them the "salt wells, with all the buildings, improvements and land thereunto belonging," constituting the smaller tract, for a consideration of "2,500 barrels of good merchantable salt"; the agreement further providing that the purchasers "are to have the privilege of mining and taking coal out of the hill opposite their land under the land of said Richardson & Co. so long as they may think proper."

The consideration having been paid, a deed dated June 24, 1851, was delivered to the purchasers, conveying to them, their heirs and assigns, the smaller tract, and

reciting in it that they were to have also "the privilege of mining and taking coal out of the hill opposite the land hereby sold to the said Trucks, under the land of the said Richardson & Co. as long as they may think proper, according to the stipulation contained in an article of agreement with William H. Richardson & Co., dated May 16, 1844."

The grantees entered into possession of the salt works property, and continued the production of salt thereon. While so doing, they mined from the larger tract all the coal they desired for the purposes of the business. This continued until about 1860, when the production of salt and the taking of coal both ceased, although the grantees, or some of their descendants, lived on the smaller property until 1920. In that year Sylvester Trucks, who is alleged to have derived a part interest from the original grantees in the Richardson deed, endorsed on the agreement of May 16, 1844, what, so far as the language is concerned, constituted a formal assignment of it, to one L. S. Roberts; and at the same time sold and conveyed to him the smaller tract, "together with the following mining rights" (quoting from the original deed above set forth), and Roberts, in turn, conveyed them to defendants, who thereupon recommenced mining coal from the larger tract. Their refusal to discontinue so doing, resulted in the bringing of this suit.

Plaintiff's ownership of the hill tract is derived, through various mesne conveyances, from William H. Richardson & Co., the deeds in this chain of title reciting that the grants are made "under and subject to and reserving therefrom the right to Bridget Trucks et al. to mine and take coal out of said tract, as assured and conveyed to them by [William H. Richardson & Co.] . . . . . . and granted by their deed and released to them upon the conditions and terms therein expressed." On the other hand, until the execution of the deeds to and by L. S. Roberts in 1920, defendant's chain of title discloses no

reference to the "privilege" appearing in the Richardson agreement and deed.

At the trial of the case binding instructions were given for plaintiff, for a nominal amount agreed upon by the parties. On defendant's motion, judgment non obstante veredicto was entered in its favor; the court holding that a proper construction of the agreement and deed gave to both parties the right to take coal from the hill tract. On plaintiff's appeal to the Superior Court, it was decided those documents operated as a sale of the coal in place, and vested in defendant an exclusive title to it; hence the judgment of the court of common pleas was affirmed.

We allowed an appeal, and in the oral argument here it was conceded by plaintiff that if the agreement and deed did so operate, the judgment of the Superior Court should be affirmed. On the other hand, defendant admits that, if it does not own the coal, then, as there was evidence from which the jury could have found in favor of plaintiff,—which must be taken as true in determining whether the judgment non obstante veredicto should have been entered (Mitchell v. City of New Castle, 275 Pa. 426),—the judgment appealed from should be reversed.

Did then the above quoted provisions of the agreement and deed, operate as a sale of the coal in place to the purchasers of the smaller tract? In our judgment they did not, but gave to the grantees only a "privilege" to take such coal as they needed in the production of salt on the smaller tract, exactly as William H. Richardson & Co. themselves had theretofore taken it; and hence this "privilege" ended when the salt works was finally closed. Although the language used is somewhat different from that employed in the agreement and deed in this case, the reasoning in Clement v. Youngman, 40 Pa. 341, and Gloninger v. The Franklin Coal Co., 55 Pa. 1, bears out the conclusion just stated.

In the former, the grantor gave to the grantee "the exclusive right and privilege of searching for, digging, raising and carrying away [from certain land]......all the iron ore and limestone on said land, and also timber sufficient to enable said mines to be worked to advantage ......and also the privilege of erecting as many necessary houses and buildings as the said Hughes may require for the successful operation of an ironworks." Hughes entered into possession and exercised the privilege granted, but did not construct an ironworks. It was held, despite the exclusive right given, that it was dependent on the building of an ironworks, and his failure in this respect avoided the intended grant of the iron ore and limestone.

In Gloninger v. The Franklin Coal Co., supra, one Wickizer "did grant, sell and convey to the said Edward Fell, his heirs, executors, administrators and assigns forever, the free right to dig coal at [grantor's] coal bed...... with the privilege freely to carry the coal from the said lot." Upon a full consideration of all our prior decisions, it was held that only an incorporeal hereditament was granted; the "right" and the "privilege" being in common with the grantor, however, for reasons not affecting the present case.

Probably every one would concede that the taking of the coal by William H. Richardson & Co., for use in the salt works, no matter how long this was continued, would not have vested in the purchasers of the works any right to continue taking coal from the hill tract, even while operating the works, unless there was a grant authorizing such taking. This fact suggests the necessity for the clause in the agreement and deed. The language there used does not aptly express a sale, but is, as it says, of a "privilege" only. If a sale had been intended the deed would normally have "granted, bargained and sold" the small tract *and* the coal in the larger one. In selling the former probably these usual and appropriate words were used (though the extract from the deed, as printed in

the record, does not enable us to definitely assert this) ; they were not employed, however, in the grant of the "privilege," and no reason appears why they were not, if a sale of the coal was intended. Of course this does not necessarily conclude the controversy, for if the legal effect of the words actually employed is that a sale resulted, it must be so adjudged; but, in determining whether or not such was the case, the consideration stated is entitled to much weight.

We cannot see, however, that the word "privilege," as here used, effects a sale of the coal. "Privilege," standing alone, carries only the idea of permission—a permissive use—and no additional word is employed to express any other intent. No case has been brought to our attention in which this word alone was used, except The Johnstown Iron Co. v. The Cambria Iron Co., 32 Pa. 241, and Carnahan v. Brown, 60 Pa. 23, each of which conflicts with the claim now made by defendants. Gloninger v. The Franklin Coal Co., already considered, used the word "right" in the granting clause, and, as pointed out, the same adverse conclusion was reached.

In the first of these cases, one Benshoof gave to a partnership, of which he was a member, "the privilege of raising iron ore in his fields, at twenty-five cents per ton, and also the privilege of raising the iron ore on his woodland......at the same price, and [agreed] to give the privilege to none else." The "privilege" thus given was held to be an incorporeal hereditament, and, we added: "The language of Lord Ellenborough, in Cheatham v. Williamson, 4 East 476, is that no case can be named where one who has only a liberty of digging for coals in another's soil, has an exclusive right to the coals, so as to enable him to maintain trover against the owner of the estate for coals raised by him." It is true, we there said, the grant "was not a sale of all the ore, notwithstanding the stipulation that the privilege was to be given to none else, because it was to be paid for by the ton, and of course no more was sold than should be raised,"—a per-

tinent fact in determining that the grant was only of an incorporeal hereditament; but, as pointed out in Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173, 181, and Jennings v. Beale, 158 Pa. 283, 288, the fact that the one deed which grants both the property and the "privilege" expresses a consideration applicable to both, "does not change the character of the grant."

In Carnahan v. Brown, supra, testator devised to his three sons a tract of land, and continued: "further I devise [to them] each an equal privilege forever of the coal bank now opened, and the ground on the ridge adjacent, so far as may be necessary for digging and taking coal." It was held that this "was obviously but a grant or devise of a privilege in the coal bank, not a share or portion of the coal."

In its opinion, in the instant case, the Superior Court relied almost entirely upon the two decisions in Caldwell v. Fulton, 31 Pa. 475, 482, where it was held there was a sale of the coal in place. Certain similarities exist between the language there construed and that in the present case, but the differences between the two are vital and controlling. There the grant was by James Caldwell to "George Greer, his heirs and assigns" of a certain described property and "also, the full right, title and privilege of digging and taking away stone coal, to any extent the said George Greer may think proper to do, or cause to be done, under any of the land now owned and occupied by the said James Caldwell; provided, nevertheless, the entrance thereto, and the discharge therefrom be on the foregoing described premises";..... "then follow the habendum and covenants of warranty, in one of which this subject of the grant is called 'the aforesaid right to the stone coal,' and in the other 'the right of stone coal hereby given.'"

It will be noticed that in those cases there was a grant of two things, the land described and "also" the coal, while here there is a grant of one "with the privilege" of taking the other; there the grant was of the "full right,

title and privilege" of taking it,—"title" being an apt word to express an absolute grant of a thing,—while here only a "privilege" is given; there the grantee, his heirs and assigns, could take "to any extent...... [they] may think proper to do *or cause to be done*," while here no "extent" is mentioned, nor is any one else than the grantees, their heirs and assigns, authorized to take "as long as they think proper"; in that case the habendum clause and the covenants of warranty show that a "right" was given, while here, so far as appears, the "privilege" was not elsewhere referred to in the deed; and, finally, the opinions there lay great stress, under the doctrine of expressio unius est exclusio alterius, upon the fact of a specified exception as to the place where the mining must be done, while here none such appears. As already stated, the deed there, as here, ran to "heirs and assigns"; words of great significance where there is a conveyance of one thing and "also" of another, but of far less importance when the grant is of one thing "with [only] the privilege" of another.

It is also claimed by appellee that the meaning of the words used in this case, at least leaves in doubt the intent of the parties; and hence the language employed, being that of the grantor, should be so construed as to resolve the doubt in favor of the grantees: Advance Industrial Supply Co. v. Eagle Metallic Copper Co., 267 Pa. 15. In doubtful cases the presumption of law is as stated, but it has little or no applicability to the present situation. We think a real doubt does not exist; assuming it does, however, since the fact that "actions speak louder than words is sound law as well as proverbial wisdom" (Graham v. Dempsey, 169 Pa. 460, 462), the most potent method for resolving it is to ascertain how, when no dispute had arisen between the parties, they consistently interpreted the language used by them. Under such circumstances, if the meaning is thus made clear, it becomes the "best of all rules of interpretation" (Funk v. Haldeman, 53 Pa. 229, 248), and there is no

room for the application of the principle invoked by appellee.

As bearing upon this question, defendant points also to the foregoing recital of the "privilege," as appearing in the several deeds in plaintiff's chain of title; and as an offset, plaintiff directs our attention to the fact that, in defendant's chain of title, from 1860, when the salt works was abandoned, to 1920, there is no reference to a grant of that "privilege." It is unnecessary to consider whether or not it was inserted in the one set of deeds, and omitted in the other, out of an abundance of caution, in order to exclude an action on the "grant, bargain and sell" clause, or other covenant in the particular deed, if an issue should be raised on the point under consideration, and the grantees lose; for neither appellee, nor any of those through whom it claims, were parties to any of the deeds in plaintiff's title, and so far as concerns it and its predecessors in title, the grantees took only under and subject to "the conditions and terms......expressed" in the original agreement and deed, which we have decided herein did not effect a sale of the coal in place.

It follows that even if we were of opinion that those documents, standing by themselves, were of doubtful meaning, so far as respects the question at issue in this case, we would be compelled to resolve it in favor of appellant, since there is ample evidence that, from the time the salt works was closed, for a period of sixty years, neither the grantees in the deed, nor any one claiming under them, made any attempt to take coal from the hill tract.

The judgments of the Superior Court and of the Court of Common Pleas of Armstrong County are reversed, and the record is remitted to the latter tribunal with directions to enter judgment on the verdict in favor of plaintiff.