## Sylvan Green Marble Co. *v.* Williams & Co., Appellant.

*Equity—Injunction—Leases—Right to quarry stone—Intent of the parties—Evidence—Sale of all stone in place.*

On a bill in equity to restrain the defendants from mining stone, the lower court granted an injunction, holding that the agreement between the parties or their predecessors constituted a sale in place of all of the stone on the land.

The original agreement provided that the predecessor of the plaintiff company should have the right to enter on the land for a term of twenty years to mine certain stone for which a royalty was to be paid. The agreement also provided that the quarrying operations were restricted to the channeling process, which was designed for the removal of large blocks of stone and which is not commercially profitable for the mining of small stone. Under the contract the right was reserved to the grantors of taking all of the soapstone or stone suitable for grinding, removed by the lessee in mining the large blocks.

·  At the time of the execution of the grant, there was already in operation a small quarry which the defendants operated from time to time without protest on the part of the plaintiff.

Under such circumstances, it was error to grant the injunction. The evidence failed to show that the defendants' operations had interfered with the plaintiff's beneficial enjoyment of the right and privilege conferred by the agreement, or that any of the stone removed for grinding was dimension stone suitable for sawing, or such as was practicable to quarry by the channeling process. The agreement was not exclusive and did not constitute a sale of all of the stone on the land.

Argued March 16, 1925. Appeal, No. 94, October T., 1925, by defendants, from C. P. Northampton County, Sitting in Equity, February T., 1924, No. 5, in the case of Sylvan Green Marble Company v. C. K. Williams & Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Bill in equity to restrain defendants from mining, quarrying and removing stone from a quarry and bill for accounting of stone taken. Before McKEEN, J.

The facts are stated in the opinion of the Superior Court.

The court granted the injunction. Defendants appealed.

*Error assigned* was· the decree of the court.

*Edward J. Fox* and with him *Orrin Serfass,* for appellant.—Cited: Robinson v. Pierce, 278 Pa. 372.

Equity aids the vigilant and not the slothful: Gettysburg Bank v. Thompson, 3 Grant 114; Evans Appeal· 81 Pa. 279; Lusk's Appeal· 108 Pa. 152; Brown v. Kemmerer, 214 Pa. 521; Tozier v. Brown, 202 Pa. 359; Hatton v. Commonwealth Trust Company, 276 Pa. 95; Stewart Wire Co. v. Lehigh Navigation Co., 203 Pa. 474.

The interpretation adopted by the parties should be considered: Tustin v. Philadelphia & Reading C. & I. Co., 250 Pa. 425; Lehigh Valley Coal Company v. Searle, 248 Pa. 385; Bubb v. Parker Oil Co., 252 Pa. 26.

*W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* and with him *Israel Krohn,* for appellee.—It was a sale of stone in place: Plummer v. Hillside Coal & Iron Co., 160 Pa. 483; Montooth v. Gamble, 123 Pa. 240; McKeever v. Westmoreland Coal Co., 219 Pa. 234.

Estoppel or laches does not enter into the case: Hansell v. Downing, 17 Pa. Superior Ct. 235; Scranton v. Manley, 13 Pa. Superior Ct. 439.

OPINION BY KELLER, J., July 9, 1925:

The court below ruled, (in answer to the plaintiff's second request for conclusions of law), that the agreement of August 23, 1904, between C. K. Williams and J. T. Williams, predecessors in title of the defendant

company, and Henry A. Schweyer, predecessor in title of the plaintiff company, was, in legal effect, a sale in place of all the serpentine, verdantique, green stone and granite in or upon the land described in said agreement; and the decree of the court enjoining defendant from entering upon the land, and from digging, taking out and carrying away any of said stone must rest upon the correctness of that ruling.

The agreement in its relevant parts provides that the "lessors," (the Williams's), "grant, demise and lease" to the "lessee," (Schweyer), and his assigns, "the right, liberty and privilege of entering at all times for and during the term of twenty years from the date hereof, in, on and upon all that certain" described tract of fifteen acres. Then comes the following clause: "The lessee shall be permitted by himself and with his agents, laborers and teams to search for, dig, excavate, mine and carry away therefrom serpentine, verdantique, green stone and granite found in, upon or under said described land, and of making all necessary roads for ingress, egress and transportation over and across the same to public road or place of deposit, also the right, liberty and privilege to erect on said land such buildings, fixtures and machinery as may be required to mine said stone and to prepare same for market, and also to deposit on any part of said land earth, stone, gravel, water and refuse material from the said quarry, doing, however, no unnecessary damage to said land or property, while the right to use, possess and enjoy the said demised premises for all other purposes than herein named shall remain in said lessors, their heirs, executors and assigns." The agreement further contained an option of renewal for an additional period of twenty years; and provided that the lessee should have six months to explore the premises and make excavations, during which time he should pay for only the stone mined and taken away, at the rates specified, after which period he was to mine and carry away not less than enough serpentine,

verdantique, green stone and granite to amount to fifty dollars per month in royalties, or pay for that quantity every month, but all payments thus made were to be held as on account of stone mined and carried away, or to be mined and carried away, during the existence of the lease. The lessee was, however, authorized to terminate the lease at any time on six months' notice. As consideration for the foregoing the lessee agreed to pay lessors a royalty for each ton of said stone mined and taken away from said premises by him, upon the following schedule: "For all serpentine, verdantique, green stone and granite, taken out as dimension stones for sawing purposes, one dollar per ton. For all small stone and offal used for other purposes, at the rate of three cents per ton. All quarrying under this lease to be done by the channeling process. By offal stone is meant to imply stone not suitable for sawing. For any soapstone that may be found in the veins of serpentine, verdantique, green stone or granite, sixty cents per ton if sold for grinding purposes, except when sold to the lessors, heirs or assigns, then and in that event, the lessors shall pay the lessee for stone at the quarry, a sum not exceeding seventy cents per ton; the lessee shall pay no royalty on such stone. Said soapstone to be put at some convenient place accessible to teams for carting them away. The said lessors, heirs or assigns are at all times to have the first privilege of taking any stone that are suitable for grinding. At price above mentioned." Most of the land described in the agreement was located on the east side of the Bushkill Creek; and on this part the lessee located his quarry. A small portion of the land lay on the west side of the creek, on which there was a quarry hole which had been opened over twenty years before and from which the lessors had mined small stone, soapstone and talc for grinding. They resumed this operation in 1907, without protest from the lessee, and again in 1917, and continued to take out small stone, for grinding, without any pro-

test from the plaintiff, which succeeded to the lessee's rights that year, until shortly before the filing of this bill in January, 1924; except during the year 1921, when operations were suspended.

The confusion of nomenclature with respect to conveyances of the right to mine and remove minerals has been referred to by the Supreme Court in Denniston v. Haddock, 200 Pa. 426; Gallagher v. Hicks, 216 Pa. 243; and Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124; which distinguished between an absolute sale of the minerals, a conditional sale thereof, and a lease of the land without impeachment of waste. The language of the agreement in this case is peculiar, and is precisely like none which came before the appellate courts in any case called to our attention. It is not, in terms, a sale of the mineral, as in Montooth v. Gamble, 123 Pa. 240; Hosack v. Crill, 18 Pa. Superior Ct. 90 and 204 Pa. 97; Gardner's Est., 199 Pa. 524; Lillibridge v. Coal Co., 143 Pa. 293; nor, strictly speaking, a lease of the land, with the privilege of mining the minerals thereunder, as in Timlin v. Brown, 158 Pa. 606; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 614; Advance Industrial Supply Co. v. Eagle Metallic Copper Co., 267 Pa. 15; nor yet, in terms, a lease of all the stone in place with the right of removing the same, as in Miles v. N. Y. S. & W. Coal Co., 250 Pa. 147; Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387; Sanderson v. Scranton, 105 Pa 469; Robinson v. Pierce, 278 Pa. 372. The subject of the demise or grant, in this case, is not the land itself, but "the right, liberty and privilege of entering" on the land, which thus remained, in so far as not actually entered upon by the "lessee" in the possession of the "lessors"; thus distinguishing it from Advance Ind. Supply Co. v. Eagle Metallic Copper Co., supra, see p. 20. Appurtenant to the grant of this right or privilege was the permission to mine and carry away serpentine, verdantique, green stone, and granite found in, upon or under the

land described in the agreement; and it will be noted, just as in Jennings Bros. & Co. v. Beale, 158 Pa. 283, "that in this clause is omitted the word 'all,' which is ordinarily used in conveyances of an absolute right..... it does not designate 'all' [serpentine, etc.]—it does not even define it by the use of the definite article 'the,' and there is not found anywhere in the deed words expressly excluding the grantor" (pp. 287, 288).   On the other hand, except as to land occupied by the lessee for mining, or for roads to and from his quarry operation or for buildings and machinery necessary in connection therewith, or for the deposit of refuse, the agreement expressly reserves to the lessors full possession and enjoyment of the premises covered by the agreement, in such manner, of course, as not to interfere with the lessee's rights under the agreement.   Nor is the lessee's privilege of mining serpentine, and the other rock named, unrestricted and absolute.   "All quarrying under this lease [is] to be done by the channeling process"; which, it is admitted on both sides, is designed for the removal of large blocks of stone, evidently contemplated by this agreement to be taken out "as dimension stones for sawing purposes," or "suitable for sawing."   The terms of the agreement as respects the royalty to be paid are significant in this respect: one dollar per ton for all serpentine, etc., taken out as dimension stones for sawing purposes; three cents per ton for all small stone or stone not suitable for sawing; showing that in making the agreement the parties had in mind the removal by the lessee of blocks or dimension stones for sawing purposes, and only such small stone as was incidental to the main operation; just as the witness Leonard, who was in charge of the quarry, under the agreement, from 1907 to 1918, testified was the practice.   The agreement would not countenance the breaking or crushing of rock suitable for dimension stone into small stone or offal: Wright v. Coal Co., 182 Pa. 514.   Furthermore, the right reserved to the lessors of taking all the soapstone or

stone suitable for grinding, removed by the lessee in mining the blocks of serpentine, etc., at seventy cents per ton, free of royalty, should be taken into consideration in arriving at the intent of the agreement; and it is to be remembered that at the time the agreement was made the lessors were engaged in the business of grinding stone for commercial purposes, that the quarry opening in dispute had been made on the premises for that purpose, and both the opening and its use were known to the lessee, and that within a few years after the agreement was executed, the lessors took small stone from this mine for grinding without protest or objection on the part of the lessee: Gillespie v. Iseman, 210 Pa. 1; McMillen v. Titus, 222 Pa. 500; Bubb v. Oil Co., 252 Pa. 26. When, in addition to the foregoing, we consider that by the terms of the agreement, the lessee's quarrying operations were restricted to the channeling process, which was designed for the removal of large blocks of stone and is not commercially profitable for the mining of small stone; that the agreement practically confines the royalty to such dimension stones; that while the agreement is for the term of twenty years with a minimum royalty reserved, it may be terminated by the lessee at any time on six months' notice; we are satisfied that it contemplated only the removal by the lessee, under the channeling process, of large blocks of stone or dimension stone suitable for sawing, and such small stone as was incidentally removed in quarrying the blocks; and that the parties did not intend nor did the agreement provide for the removal of all the stone on the tract by the lessee; that it was not a sale or conveyance of all the serpentine, etc., stone on the tract, but rather the grant of a privilege to remove such of the stone as was suitable for sawing, and left remaining in the grantors—provided it occasioned no interference with the grantee,—the right to remove small stone, not contemplated by the lessee's quarrying operations, as well as giving them the right to buy at a fixed price for grind-

ing purposes all such small stone incidentally mined by the lessee in channeling for large blocks or dimension stone; that the privilege thus granted was not exclusive and hence did not amount to a sale of all the stone in place: D. & H. Canal Co. v. Hughes, 183 Pa. 66, p. 69. The agreement gave to the lessee the right to remove, without hindrance or interference from the lessors, all such stone as was contemplated under it, leaving to the lessors the right to mine and carry away for their own uses such as was not within the grant or privilege; and while not exactly the same as, should be construed along the lines of Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Gloninger v. Franklin Coal Co., 55 Pa. 9; Grubb v. Grubb, 74 Pa. 25; Clement v. Youngman, 40 Pa. 341; Jennings Bros. & Co. v. Beale, supra; Hollenbach Coal Co. v. L. & W.-B. Coal Co., supra; Saltsburg Colliery Co. v. Trucks Coal Mining Co., 278 Pa. 447.

As the evidence failed to establish that the defendant's operations had interfered with the plaintiff's beneficial enjoyment of the right and privilege conferred by the agreement, or that any of the stone removed by defendant for grinding was dimension stone suitable for sawing, or such as was practicable to quarry by the channeling process, and the decree of the court is based on the contrary, it follows that in our view of the case the decree must be reversed.

The fourth, fifth, seventh, eighth, tenth, eleventh and seventeenth assignments of error are sustained. It is unnecessary to pass upon the others. The decree is reversed and the record remitted to the court below with directions to enter a decree dismissing the bill. Costs to be paid by appellee.