## Commonwealth v. Pipes, Appellant.

*Criminal law—Murder—Manslaughter—Evidence.*

On the trial of an indictment for murder where it appears that the killing was done at midnight in an alley near the prisoner's stable, and the prisoner claims that he shot the deceased in self defence while he was escaping from the stable, it is proper to admit evidence that part of a harness belonging to the prisoner had been stolen, that it had been in the possession of the deceased, and that the latter had traded it to another person with a promise to supply the missing part, for the purpose of showing the deceased's intent in entering the stable.

*Felonious entry—Right to pursue—Act of April 22, 1863.*

Under the act of April 22, 1863, P. L. 531, the willful and malicious entry of a stable with intent to commit a felony, is itself a felony. If, therefore, in the above case the deceased was in the stable with intent to steal the harness, he had committed a felony, though the actual larceny was not completed, and the right of the prisoner to pursue and arrest him must be determined as in cases of felony actually committed, not of a felony attempted but abandoned by a fleeing criminal.

*Credibility of defendant—Charge of court.*

On the trial of an indictment for murder it is improper to charge: "The defendant is, of course, most deeply interested in your determination, and just so far as he fails in being substantiated and corroborated by other testimony in the case, or facts in the case, and that interest and feeling would bias him or prejudice him in giving his testimony, so far would you be warranted in discrediting that testimony."

Argued Oct. 3, 1893. Appeal, No. 59, Oct. T., 1893, by defendant, William Slater Pipes, from judgment of O. & T.

Greene Co., Oct. T., 1891, No. 1, on verdict of guilty of man-slaughter.   Before STERRETT, C. J., GREEN, WILLIAMS, Mc-COLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Indictment for murder.   Before EWING, J.

At the trial it appeared that about midnight on Aug. 22, 1891, defendant shot and killed Porter Huffman in South alley in the borough of Waynesburg.   Defendant testified in substance that on the night in question he saw from his bed-room window some person ride out of South alley toward his stable, from the direction of Morgan street, and in a very few moments after, he saw a flash of light in his stable, as if some person was striking matches there—that he hastily dressed him-self, seized his revolver, and went around his lot and the house of Elza Spragg, up Whiskey alley, and through the cracks in the weatherboarding of his stable, saw a man inside the stable examining his harness by the light of matches which he was striking for the purpose.   That he passed around the stable coming to the double door at the north side where he found the door open, and, as he stepped to the door the person inside the stable came to the door with a set of harness on his arm—that the man meeting defendant at the door, dropped the har-ness and struck defendant a blow with his fist in the face and after some scuffling, the man ran up South alley toward Mor-gan street and directly toward an electric light standing on Morgan street where it is intersected by South alley.   That he pursued the man along the alley at a distance of some 60 or 65 feet, and that when the prisoner came to the mouth of a private alley he called twice to the man to halt, and that they were then twelve or fifteen feet apart.   The man not halting he fired his revolver into the air to scare him.   The man then turned upon defendant, made a grab at him with his left hand and tore his shirt and scratched his breast, and the prisoner, believing that his life was in danger, shot the man, as he alleged, in self defence.   That immediately after shooting, the man fell and defendant went to him, found him lying on his face—that he put his arms around his body under his arms, raised him up and carried him some ten feet back toward his stable, leaned him against the fence and immediately ran to the house of a neighbor and gave the alarm.

The commonwealth introduced evidence which tended to show ill feeling between defendant and deceased. There was also evidence tending to contradict some of the material statements of defendant in his account of the shooting.

Defendant made the following offers :

Defendant having testified that part of a set of harness belonging to him was stolen out of his stable in May, 1891, defendant offered to prove that said harness was afterwards found in the possession of the deceased. Offered as corroborative of the evidence already in showing that deceased entered defendant's stable on the night of Aug. 22, 1891. Objected to for the reason that the same is incompetent and irrelevant. Objection sustained and exception. [1]

Defendant having testified that part of a set of harness belonging to him, was stolen out of his stable in May, 1891, defendant offered to prove that said harness was afterwards in possession of deceased, that deceased traded the harness to another party for a sleigh, agreeing with said party to furnish the martingale and rings belonging to the set, on Sunday, Aug. 23, 1891. Offered as corroborative of the evidence already introduced showing that deceased entered defendant's stable on the night of Aug. 22, 1891, for the purpose of committing a larceny. Objected to as incompetent and irrelevant. Objection sustained and exception. [2]

The court charged in part as follows :

" What the deceased was doing there, what the defendant was doing there, just what occurred between them on the ground before anybody else arrived is of vital inquiry for you. If you ascertain what the defendant was doing there, and what the deceased was doing there, you would doubtless have some light upon what subsequently followed as to determining exactly what happened between them when they did come to a conflict, you would be better able to ascertain under just what circumstances the shot was fired that occasioned the taking of Huffman's life. . . .

" In ascertaining all these facts you necessarily must pass to a greater or less extent upon the credibility of the witnesses. It is your duty to try and reconcile the testimony, but when you cannot reconcile the testimony, it is your duty to determine which witness you will believe, that is your duty, and in

determining the amount of credibility you give to every witness, you take into consideration anything that appears in his conduct on the stand, anything that appears in his conduct going to show any bias or feeling in the case, and all contradictions by other witnesses.  When a witness has been successfully contradicted it would warrant you in discarding his testimony, at least so far as that contradiction goes, unless sustained by other testimony in the case or some other matters. Contradictions are introduced for the purpose of affecting the credibility of the witness, so you must take them into consideration in passing upon the testimony with regard to determining what the true state of facts may be.

" [The defendant is, of course, most deeply interested in your determination, and just so far as he fails in being substantiated and corroborated by other testimony in the case, or facts in the case, and that interest and feeling would bias him or prejudice him in giving his testimony, so far would you be warranted in discrediting that testimony.  But notwithstanding the interest of any witnesses if they are corroborated by the testimony of other witnesses and other testimony in the case, then you cannot disregard it simply because of their feeling or interest in the case.  It is only a matter for you to take into consideration in passing upon the amount of credibility you are to give the testimony of every witness.] " [4] . . . .

Verdict, guilty of manslaughter.  Defendant was sentenced to pay six cents fine, and undergo an imprisonment of three years and three months.  Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence ; (4) portion of charge in brackets, quoting bills of exception and instruction.

*J. B. Donley, James E. Sayers* and *Wily, Buchanan & Walton* with him, for appellant, cited : Whart. Cr. Ev., 9th ed., §§ 27, 28, 29, 30, 31, 32, 265 ; Com. v. Ferrigen, 44 Pa. 386 ; Goerson v. Com., 106 Pa. 477 ; Swan v. Com., 104 Pa. 221 ; Johnson v. Com., 20 W. N. 1 ; Com. v. Johnson, 133 Pa. 293 ; Kramer v. Com., 87 Pa. 299 ; Com. v. Spink, 27 W. N. 40 ; Shaffner v. Com., 72 Pa. 60 ; Parnell v. Com., 86 Pa. 260 ; Goersen v. Com., 99 Pa. 388.

*H. J. Ross,* district attorney, *John S. Robb, R. F. Downey* and
*W. A. Hook* with him, for Commonwealth, cited: Tiffany v.
Com., 121 Pa. 165 ; Oliver v. State, 1 Hawkins, 457 ; State v.
Rhone, 2 Devereaux, 58 ; Com. v. Megary, 8 Phila. 616 ; Sny-
der v. Com., 85 Pa. 519 ; Alexander v. Com., 105 Pa. 1 ; Goer-
sen v. Com., 99 Pa. 388 ; Swan v. Com., 104 Pa. 218 ; Moss v.
Com., 107 Pa. 267.

Opinion by Mr. Justice Mitchell, October 30, 1893 :

Under the charge of the learned court, the purpose of the
deceased to commit a felony, in entering the prisoner's stable,
was an important fact, indeed it was stated to the jury as part
of a "vital inquiry" for them.　All evidence therefore which
bore directly on such inquiry, was relevant and admissible, even
though it incidentally tended to show the commission by the
deceased of a crime not part of that on trial.　The two offers
included in the first and second assignments of error were clearly
within this principle.　The presence of the deceased inside of
a locked stable, near midnight, was of itself very strong evi-
dence that he was there with some criminal intent, and what
this intent was, would be made clear, if it should be shown, as
was offered, that part of a harness belonging to the prisoner
had been stolen, that it had been in the possession of the de-
ceased, and that the latter had traded it to another person with
a promise to supply the missing part.　Evidence to that effect
was admissible.　It did not come within the general rule that
one crime cannot be introduced as evidence of another sepa-
rate and unconnected.　Such evidence, as was said in Goersen
v. Com., 99 Pa. 388, " cannot be received to impeach (the pris-
oner's) general character, nor merely to prove a disposition to
commit crime.　Yet under some circumstances evidence of an-
other offence by the defendant may be given.　Thus it may be
to establish identity ; to show the act charged was intentional
and willful, not accidental; *to prove motive;*" etc.　Examples of
the exceptions to the general rule may be found in Com. v. Fer-
rigan, 44 Pa. 386 ; Kramer v. Com., 87 Pa. 299 ; Goersen v.
Com., supra ; and Com. v. Johnson, 133 Pa. 293.　The first
and second assignments must be sustained.

While the point is not expressly raised on this record yet as
the case must go back for another trial, it is proper to call at-

tention to the act of April 22, 1863, sec. 2, P. L. 531, by which the willful and malicious entry of a stable etc., either by day or by night, with or without breaking, with intent to commit any felony therein, is itself a felony. If therefore the deceased was in the stable with intent to steal the harness, he had committed a felony, though the actual larceny was not completed, and the right of the appellant to pursue and arrest him must be determined as in cases of felony actually committed, not of a felony attempted but abandoned by a fleeing criminal.

The fourth assignment must also be sustained. While it was entirely proper to call the jury's attention to the prisoner's interest, as affecting his credibility, and while the terms in which the learned judge did so might be correctly understood by him and by members of the bar, familiar with legal distinctions, the general effect of the charge on this point was to discredit the prisoner as a witness and to lead the jury to throw out his testimony except where it was corroborated. This is the usual rule as to accomplices, not as to defendants, and in a case where the prisoner was necessarily the only witness as to the actual circumstances of the shooting it put upon him a greater burden than the law imposes.

Judgment reversed, and venire de novo awarded.