## Gardner's Estate.

*Executors and administrators—Surcharge—Failure to collect promissory note.*

An executor who loans money of the estate upon the borrower's personal security does so at his own risk.

Where executors make no effort to collect a promissory note belonging to the estate, and after one year from the death of the testator renew the note without security, and for two years after the death of testator the maker remains presumptively solvent and able to pay the note, the executors are properly surcharged with the amount of the note.

*Deed—Sale—Conversion—Minerals—Royalties.*

Where an owner of minerals makes an absolute sale and conveyance of the same for the consideration of one dollar and the agreement by the grantee to pay a certain sum for each carload of minerals removed, the sale and conveyance constitute an absolute conversion of the minerals, and after the death of the owner the royalties go to the executors, and not to his heirs, and the lien of decedent's debts continues against them for five years,

*Partnership—Private bank—Continuance of business after death of partner.*

Partnership articles of a banking firm provided that the partnership should not be dissolved by the death of a partner, but that his executors etc., or the legatees of his interest might continue the same in the partnership. One of the partners died, but no steps were taken by his legal representatives, or by the firm to settle and close out his interest in the firm's business prior to its assignment for creditors. On the contrary the creditors were notified that his interest remained in the business, and the banking business was prosecuted thereafter in the same rooms, with the same books and blank forms, using the same firm name, during all of which time the widow and sons of the decedent remained silent, and to all appearances elected on behalf of the estate, to continue his interest in the business. The certificates of deposit issued by the firm after the death of decedent were identical in form with those issued before his death, and were issued not only for new deposits, but in substitution for old certificates that had become worn or mutilated. *Held*, that depositors who had taken new certificates after the death of decedent in substitution for certificates issued prior to his death, were entitled to share with the holders of certificates which were issued prior to the death of decedent, and the distribution of the fund, and that the taking of the substituted certificates was not a novation.

Argued April 22, 1901.  Appeal, Nos. 126, 144 and 286, Jan. T., 1900, by Anna P. Gardner, James P. Gardner and Paul D. Gardner, Executors, etc., of James Gardner, deceased, and by Martha G. Brotherline and Martin Bell, trustees, and by A. T. Stone, from decree of O. C. Blair Co., No. 284, overruling exceptions to report of auditor in the Estate of James Gardner, deceased.  Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.  Affirmed.

Exceptions to report of A. W. Porter, Esq., auditor.

The auditor found amongst others the following facts:

9.  That among the assets of the decedent's estate, which came into the hands of the accountants and which is charged in the inventory and appraisement, and which is made the subject of an additional exception filed by leave of court, was a promissory note due to the decedent from William Jack, for the sum of $5,000.  That this note was not collected by accountants, nor was there any effort made, more than a request, to collect the same for more than two years after the death of the testator. The accountants collected the interest on this note and at the

date of its maturity, which was within a year after testator's death, they renewed the same, taking no other security than the personal responsibility of the maker. That William Jack, the maker of the said note, was a man who had a good financial standing and was perfectly solvent for over two years after the note came into accountants' hands. William Jack was the president of, and a large holder of stock in the First National Bank of Hollidaysburg; also a member of the banking firm of Gardner, Morrow & Company and the owner of some valuable real estate in Blair County.

10. That the testator in his lifetime, to wit: July 3, 1891, made and executed a certain contract with one George W. Johnson, granting, bargaining and selling to him, his heirs and assigns, all the limestone in, under and upon a certain described tract of land, with all rights necessary for the quarrying and taking away of the same. To have and to hold the same for the period of ten years from date, and for such additional time thereafter as the said limestone could be quarried and mined with profit. In consideration of which, the said Johnson paid the sum of $1.00 and agreed to pay further sum of twenty-five cents for each carload of satisfactory limestone taken and shipped from said lands.

16. That in January, 1874, the private banking house of Gardner, Morrow & Company was organized, the firm consisting of James Gardner, (the testator) A. S. Morrow, W. H. Gardner and William Jack. The articles of copartnership provided, inter alia, that the partnership should not be dissolved by the death of a partner, but that his executors, administrators, or the legatees of his interest, might continue the same in the partnership : that on or about the       day of          , 1888, William Gardner died ; that on April 5, 1894, the said James Gardner died, leaving to survive them A. S. Morrow and William Jack, who continued to conduct the banking business under the old firm name of Gardner, Morrow & Company, notices being sent by them over the firm name of Gardner, Morrow & Company to the patrons of the bank, of the death of James Gardner and that his interest in the firm would continue and remain unchanged, and that the business would continue as before; that on September 18, 1896, a voluntary assignment was made by A. S. Morrow and William Jack, surviving partners of the firm

of Gardner, Morrow & Company, to John Cree, in trust for the benefit of creditors.

17. That neither the executors nor devisees of James Gardner, the testator, made any effort to settle or close out the interest of the testator in the banking firm of Gardner, Morrow & Company, before the said assignment for benefit of creditors made by the said firm.

18. That among the patrons of the banking firm of Gardner, Morrow & Company at the time of the death of the testator, were many who held certificates of deposit bearing interest at four per cent per annum; that it was the custom of Gardner, Morrow & Company, both before and after the death of James Gardner, to indorse payments of interest and partial payments of the principal upon the face of the certificates; that when either by frequent handling or indorsements of credits the certificates became worn, defaced or mutilated, or by the addition of other deposits, the firm would, without consulting the depositor, take up the certificates and give new ones in their place; that this custom was kept up until the date of the assignment for the benefit of creditors by said firm; that the certificates issued after the death of the testator were in all respects like those issued before that time, in fact, were identical in every respect, being taken from the same book of blanks kept by the firm before that date and were signed with the same firm name. No notice was given to depositors of a change in the nature of the security when a new certificate was issued, the depositor not being consulted in the matter, but depositors were informed by the firm and its employees, that the interest of James Gardner remained in the business; that when an old certificate of deposit was replaced by a new one, the old one would be canceled by a perforation on a three-pointed spear, or by being marked paid, but the attention of the depositor was not directed to the cancellation; that many of the certificates dated subsequent to the death of James Gardner represent money deposited in the said bank during his lifetime.

19. That holders of certificates of deposit of the firm of Gardner, Morrow & Company, dated prior to the death of James Gardner, and holders of certificates of deposit dated subsequent to that date, but representing deposits made during testator's life, as well as creditors whose claims arose subsequent to the

death of James Gardner, all participated in the distribution of the assigned estate of the firm of Gardner, Morrow & Company.

20. That the fund now for distribution arises from the individual estate of James Gardner, remaining after the payment of his individual indebtedness; that no objection has been made by the legatees and devisees of the decedent as to the right of any depositor participating in this distribution who holds evidences of indebtedness that can be traced to antedate the death of testator. The only objection entered has been made by the creditors of the firm who hold certificates dated prior to the death of testator, and who themselves participated in the distribution of the assigned estate of Gardner, Morrow & Company.

21. That the certificates of deposit presented to the auditor are all payable on demand; that no demand for the payment of any of these certificates was made prior to the assignment for the benefit of creditors by the firm of Gardner, Morrow & Company.

The conclusions of law were, inter alia, as follows:

4. That the failure of accountants to use any means to compel the payment of the $5,000 note due the estate from William Jack, and their renewal of the same without other security than the debtor's personal responsibility, the loss of said note was due to their failure to properly perform their duties as trustees and they must be surcharged with the amount of said note.

5. That the words "grant, bargain and sell," in the agreement between James Gardner, the testator, and George W. Johnson, dated July 3, 1891, are a severance of the title, and the limestone becomes a separate tenement from the balance of the land, the royalties of which are purchase money of real estate. That the purchase money is payable in royalties instead of in solido, does not change the character of the sale to that of a lease, and the purchase money or royalties are payable to the executors and not to the heirs or devisees of the testator.

8. That accountants must be surcharged with all royalties collected, or which could have been collected, under both agreements made by testator and referred to in the tenth, etc., findings of facts.

9. That as the fund for distribution rises from the individual

estate of James Gardner, it is distributable primarily to his individual creditors until they are paid in full; and secondarily to the creditors of the Banking House of Gardner, Morrow & Company, of which testator was a partner prior to the date of his death, April 5, 1894, unless they, by the surrender of their old certificates or evidences of indebtedness and the receipt of new certificates, thereby made a contract of novation; or unless they, by participating in the distribution of the assigned estate of Gardner, Morrow & Company, are estopped from now claiming here as against other creditors of the partnership of which testator was a member.

10. That the creditors holding certificates of deposit dated subsequent to the death of James Gardner, but representing deposits of money made prior to that date, and which have been traced through the books of the banking firm of Gardner, Morrow & Company, are entitled to participate in this distribution. That they were misled by the printed statement and the declarations of the surviving members of the partnership as to the continuance of the interest of the decedent's estate in the firm, and that there was no intention on their part to accept a new security. Novation is a question of intent. The taking of a new note for an old one, does not extinguish such debt unless it is expressly so understood at the time.

Exceptions to the auditor's report were dismissed by the court in an opinion by LONGENECKER, P. J., specially presiding.

*Errors assigned* were in dismissing exceptions to auditor's report.

*A. O. Furst* and *Thomas J. Baldridge*, for Anna P. Gardner et al., executors, appellants.—The royalties were profits issuing out of the real estate, and as such after the lapse of two years from the death of decedent simple contract creditors had no lien thereon: McCoy v. Scott, 2 Rawle, 222; Torr's Estate, 2 Rawle, 253; Schwartz's Estate, 14 Pa. 47; Adams v. Adams, 4 Watts, 160; Watt's Estate, 168 Pa. 422; Robb's Appeal, 41 Pa. 45; Parsons's Estate, 82 Pa. 465; Howard's Estate, 8 Pa. Dist. Rep. 125.

The several contracts in this case are called leases in the in-

struments themselves. While, therefore, the contract for leasing the limestone is termed a lease, and while it has many of the legal incidents of a lease, such contracts are generally, in fact, sales of the coal, or, as in this case, the limestone in place, at a price per ton, to be paid as the coal is mined or the limestone quarried. That such contracts or contracts of this nature constitute a sale in place has been decided in various cases by this court: Sanderson v. City of Scranton, 105 Pa. 469; Delaware, Lackawanna & Western R. R. Co. v. Sanderson, 109 Pa. 583; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483; Bird Coal & Iron Co. v. Humes, 157 Pa. 289; Maffet's Estate, 8 Kulp, 184; Caldwell v. Fulton, 31 Pa. 475.

The relation of vendor and vendee having been created by these instruments, calling them by whatever name we may choose, it follows that the respective estates left in the vendor and vendee are to be treated as real estate as to creditors: Auwerter v. Mathiot, 9 S. & R. 397; McMullen v. Wenner, 16 S. & R. 18; Vierheller's Appeal, 24 Pa. 105; Stephens's Appeal, 8 W. & S. 186; Price on Limitation and Liens, edition of 1857, p. 277.

The lien of a judgment against the vendor of lands holding legal title as security for unpaid purchase money, will bind the estate of a vendor so long as the contract remains unexecuted, and to the extent it is unexecuted: Kinports v. Boynton, 120 Pa. 306; Wolf v. Ferguson, 129 Pa. 272; 3 Trickett on Liens, p. 266, sec. 204.

A demise of all the merchantable coal, all the workable coal, all the mineral coal, or all the coal which can be removed by prudent, skillful and proper mining in, under and upon a described piece of land, is a sale of the coal, and the royalties are purchase money of real estate: Maffet's Estate, 8 Kulp, 184; Fairchild v. Fairchild, 9 Atl. Repr. 255; Stoughton's Appeal, 88 Pa. 198; Scranton v. Phillips, 94 Pa. 15; Sanderson v. Scranton, 105 Pa. 469; Montooth v. Gamble, 123 Pa. 240; Caldwell v. Fulton, 31 Pa. 475; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293; Brown v. Beecher, 120 Pa. 590.

Where the owner of land has entered into articles of agreement for the sale thereof in his lifetime, and then dies, the articles of agreement create an equitable conversion of the land into personalty for the purposes of succession, and for suc-

cession only; and the purchase money becoming due under the articles of agreement, so far as the widow and heir or devisee is concerned is personalty; but so far as creditors are concerned, it remains real estate : Foster v. Harris, 10 Pa. 457 ; Rose v. Jessup, 19 Pa. 280 ; Leiper v. Irvine, 26 Pa. 54 ; Fryer v. Rishell, 84 Pa. 523 ; Leiper's Appeal, 35 Pa. 420 ; Eckels v. Stewart, 53 Pa. 460 ; Strauss's Appeal, 49 Pa. 353 ; Bender v. Luckenbach, 162 Pa. 18.

A novation arose as to certificates issued in substitution after decedent's death : National State Bank of Camden v. Pennock, 2 Monaghan, 166 ; Wild v. Davenport, 48 N. J. 129 ; Holme v. Hammond, L. R. 7 Ex. 218 ; Gratz v. Bayard, 11 S. & R. 41 ; Owens v. Mackall, 33 Md. 382 ; McArdle v. West Phila. Title & Trust Co., 7 Pa. Superior Ct. 328 ; Baker's Est., 1 Del. Co. Rep. 133 ; Shafer's App., 99 Pa. 249 ; Briggs v. Holmes, 118 Pa. 283 ; Thompson v. Percival, 5 Barnewall & Adolphus, 925 ; Lindley on Partnership (Ewell's ed.), *444.

*A. A. Stevens* and *W. L. Pascoe*, of *Stevens & Pascoe*, for A. T. Stone, appellant.

*O. H. Hewit*, for Martha G. Brotherline et al., appellants.

*W. I. Woodcock*, with him *Harry A. McFadden, John M. Snyder, Charles Geesey, W. M'Knight Williamson, J. Lee Plummer* and *M. A. Young*, for certain appellees.—The proceeds of the sales were collectible by and payable to the executors for the payment of the debts of the testator. The contracts were absolute sales of the limestone, as has been held by the Supreme Court in similar cases : Maffet's Estate, 8 Kulp, 184 ; Fairchild v. Fairchild, 9 Atl. Repr. 255 ; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483 ; Caldwell v. Fulton, 31 Pa. 475 ; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613 ; Duff's Appeal, 21 W. N. C. 491 ; Kerr v. Day, 14 Pa. 114.

The failure to collect the Jack note makes the executors responsible, as is well established by this court in Merkel's Est., 131 Pa. 584 ; Eisenbise v. Eisenbise, 4 Watts, 136 ; Johnston's Est., 9 W. & S. 107 ; Baer's App., 127 Pa. 360.

Novation being claimed, the burden of proof is on the appellants and objecting creditors to prove it : Potter v. McCoy, 26

Pa. 458; Sykes v. Gerber, 98 Pa. 179; Hunter v. Moul, 98 Pa. 13.

A new note taken for an old debt, does not extinguish the old debt unless expressly so understood: Slaymaker v. Gundacker, 10 S. & R. 75; Hacker v. Perkins, 5 Wharton, 95.

*O. H. Hewitt, A. A. Stevens* and *W. L. Pascoe,* for certain other appellees.

OPINION BY MR. JUSTICE MITCHELL, May 27, 1901:

On the question of the surcharge of the royalties accruing after the death of the testator the majority of the judges who heard the case are in favor of affirming the decree, and on the other questions the court is unanimously so.

Decree affirmed.