## Commonwealth *v.* Knittle, et al., Appellants.

*Criminal law—Intoxicating liquors—Possession—Manufacture—Evidence—Case for jury.*

In the trial of indictments for manufacturing and possession of intoxicating liquors, a verdict of guilty will be sustained, where the evidence of the Commonwealth, although contradicted, established that the defendants were working in a building which contained two stills of large capacity, in active operation and a considerable quantity of alcohol.

A defense that one of the defendants was a landlord who testified

that he had leased the property in the circumstances stated in the opinion raises a question for the jury, and a verdict of guilty will be sustained.

*Trials—Charge of court—Character evidence.*

A point that "the evidence of good character, offered by the defendants, is substantive and positive proof in the defendants' behalf, and may give rise to a reasonable doubt, which would not otherwise exist, by making it improbable that men of such character would commit the offense charged" is improper as calling for a peremptory instruction that "the evidence" offered was substantive and positive proof, an instruction which would deprive the jury of the right to disbelieve the character evidence, or any part of it, if they wished to do so.

Argued October 5th, 1926.    Appeals Nos. 12, 13, 14 and 15, February T., 1927, by defendants from sentence of Q. S. Columbia County, December Sessions, 1925, No. 42, in the case of Commonwealth of Pennsylvania v. Clyde Knittle, William Knittle, Nelson Kostenbauder and Frank C. Kostenbauder. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictments for manufacture and possession of intoxicating liquors. Before EVANS, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendants appealed.

*Errors assigned*, were various rulings on evidence, the charge of the court, answers to points and the sentence of the court.

*William T. Connor*, and with him *L. S. Walter* and *Edward J. Flynn* for appellants.

*H. R. Stees*, District Attorney, for appellee.

OPINION BY LINN, J., November 17, 1926:

On November 5, 1925, five state policemen raided an illegal distillery conducted in a 2½ story building

which, until the preceding June, had been used as an ice house for storing ice taken from dams nearby. Entrance was obtained by forcing the doors, all of which were locked. Three men (appellants) at work in the plant were arrested,—two of them in the boiler room, one in another room on the ground floor. On the second floor the officers found one still of 5000 gallon capacity and another of 1500 gallons with condensers, all in operation. Other equipment and very large quantities of alcohol were also found.

One of appellants, Frank G. Kostenbauder, owned the premises, but was not there at the time of the raid; of the others, who were arrested on the premises, Nelson Kostenbauder was digging a ditch for a pipe on the ground floor; the other two, Clyde Knittle and William Knittle, were engaged in the boiler room. A fifth man, whose name is said to be Charles Brown, was also arrested. These persons were indicted for (1) possessing, and (2) manufacturing alcoholic liquor in violation of the act of March 27, 1923, P. L. 34. They were convicted and sentenced on the charge of manufacturing. They were tried together below and their appeals were argued together here.

They present a number of assignments of error, some of which merit no discussion. They contend that the evidence was insufficient to sustain the convictions. It is true that if the jury had accepted their explanation of their presence in and their relation to the distillery, they might have been acquitted; but it was necessary to submit the evidence to the jury and their finding binds us.

In defense of Frank Kostenbauder it was urged that he had rented the premises to one Brown, and therefore had nothing whatever to do with the manufacture, and to support that contention, he offered in evidence what he called a lease, which was merely a draft of such an instrument dated the 22nd of August 1926 (1925 was intended), reciting himself as lessor and

leaving blank the space for the name of the lessee; no name was ever inserted in that blank. The term was for one year with the right to renew for another, at a rental of $100.00 per month. The paper was not executed by the lessor or by any lessee. This appellant testified that he had agreed to rent the place to this man Brown, whom he had never seen before, and whose address he did not take. He also testified that another man named Charles Brown, also convicted, had paid three months' rent as it fell due monthly, and that he had given the draft of the lease to this Charles Brown to have it executed by the lessee originally intended, but that it had not yet been done. It was shown that appellant had furnished the fuel used for the boilers, though he testified that he had sold it to Charles Brown, and that he had not been paid for it. Two of his employees unloaded this fuel and placed it for use in the plant. In the alleged leasehold were found a bill charging him with the fuel and also the railroad shipping papers; from these it appeared that he was the consignee of the fuel and that he paid the freight. He also conducted a cement block factory in a building which was structurally a part of, or was built against, the premises said to have been leased; and into which access from one to the other was furnished by a door in the dividing wall. While the lease recited that the ice house was to be rented for the purpose of a warehouse, in July he saw Charles Brown install a boiler which was put in operation in August. He also knew then that the leasehold was being operated for purposes other than a warehouse.

On the morning of the arrest, but before it took place, he had been in the part occupied by the alleged tenant, and had directed his brother Nelson where to dig a ditch for a water pipe.

The appellant Nelson Kostenbauder testified that he was employed by his brother Frank and was engaged in digging a ditch for a water pipe when arrested by

the state police. The room in which he was working had no windows. The door to it was locked and the officers broke in.

The appellant William Knittle, had been employed since the 9th of September, as he said, "firing in the boiler room." Access to the second floor machinery where the stills were, was by a stairway from the boiler room. The boiler was connected up with those distilling appliances. This appellant testified "I don't know the man who employed me; he was a stranger to me; I don't know who he was." His wages were $50 a week and he said that one Brown paid him the first time and thereafter each payday he was paid by different men whose names he did not know. He testified that he got his instructions about firing from day to day over a telephone in the plant from some one in the plant though he did not know who gave them. When the police broke the lock to enter the boiler room, he tried to keep them out by hooking the door on the inside.

The other appellant, Clyde Knittle, was also found in this boiler room, "in the coke bin, shoveling coke." From this room a door led into what the witnesses called the bottling room (though not recently used for that purpose) and from the bottling room a door entered into the cement block plant referred to above, and operated by appellant Frank Kostenbauder. This door was locked on the inside when the police reached it, through the block plant.

We have, then, the police finding three of appellants employed behind locked doors in a distillery in full operation, in a building owned by the other appellant, in the circumstances briefly outlined, together with their explanation of their relation to the premises. It is obvious therefore that it was the duty of the jury to find whether they, or any of them, were engaged in

manufacturing the liquor, in process at the moment of arrest and which had apparently been taking place for several months before.

Frank Kostenbauder complains of the instructions to the jury about his alleged relation as lessor of the premises, contending that the tenant, and not he, was violating the law, and in support of the argument, his counsel cites Com. v. Switzer, 134 Pa. 383. But, as was stated in that case, a landlord may be convicted of committing a crime which his tenant is also committing; the fact depends on evidence. Here there is evidence that the lessor lived within two squares of the property said to have been leased; that he was engaged in the cement block business which required his presence in an attached building, with a door permitting access from his establishment to the distillery. His testimony concerning the alleged lease in July has already been referred to. Very soon thereafter he knew that a boiler was installed and other work done in the place (for which he supplied lumber) and also knew that the so-called tenant was not using the premises for a wareroom but for manufacturing purposes; while he testified that he had never been in the place, he stated that he detected odors, incident to some manufacture, and his brother testified that he was in the place on the fifth of November before the police came. His furnishing of fuel has also been referred to. We think, therefore, that there was no error in the qualification by the court of the points of charge submitted on his behalf, to the effect that as landlord he was not guilty of the crime said to have been committed on the leased premises by the tenant, the qualification referring particularly to his own knowledge of and conduct in the circumstances surrounding the alleged tenancy as described in the evidence.

As to appellant Nelson Kostenbauder, the court affirmed a request for charge to the effect that he should not be found guilty if the jury concluded that

he was employed to dig a ditch for a pipe "to connect a water line with the reservoir," and if he had no connection with the manufacturing of the liquor, but added to that affirmation, that, if on the other hand, the jury found that he was digging a trench for a pipe from the reservoir so that the distilling plant might be more efficiently operated, and with less likelihood of detection, he might be convicted. He now objects to that qualification by suggesting that there is no evidence about the effect of the installation of such a pipe on the plant. We are not impressed with the contention. It leaves out of view essential circumstances in the case: the relation of the reservoir and the pipe line and the dam to the ice house, the fact that he was employed by Frank Kostenbauder, the owner, who took him into the plant and showed him what he wished done, that he was working behind locked doors with two large stills in operation overhead, together with the other evidence relating to the general situation already referred to.

The four appellants complain of a portion of the charge, and the refusal to affirm a point, relating to the effect to be given by the jury to evidence of good character. The court charged at some length on the subject and we think without error. But in addition, the learned trial judge was requested to charge as follows: "The evidence of good character offered by the defendants, is substantive and positive proof in the defendants' behalf, and may give rise to a reasonable doubt, which would not otherwise exist, by making it improbable that men of such character would commit the offense charged, and if the jury is convinced that the evidence of good character offered by the defendants has raised a reasonable doubt in their minds, of the guilt of the defendants, the verdict must be, not guilty." Appellants contend that the expression in that request, "may give rise to a reasonable doubt which would not otherwise exist," was not contained

in the general charge and that therefore the general charge was inadequate and that the refusal to affirm the point was error, because, so they argue, that element in the case was not submitted to the jury. The point was properly declined. It requested a peremptory instruction that "the" evidence offered was substantive and positive proof, an instruction which would deprive the jury of the right to disbelieve the character evidence, or any part of it, if they wished to do so, yet it was only if the jury found the fact from the evidence that the ultimate conclusion might follow, justifying the verdict of not guilty requested in the point. It was said in argument that the request was quoted from Com. v. Harmon, 199 Pa. 524, but that is inaccurate; in that case the general rule on the value of such evidence was stated, but this point for charge requested a declaration by the court of the effect of the evidence, instead of permitting the jury to find the fact from the evidence and then applying the rule stated in Com. v. Harmon (supra) and in Com. v. Dingman, 26 Pa. Superior Court 615, 623, as the facts right require; for "if a jury is satisfied beyond a reasonable doubt under all the evidence, that the defendant is guilty, evidence of previous good character is not to overcome the conclusion which follows from that view of the case": Com. v. Harmon (supra).

Appellants also suggest that the court erred in charging the jury on the credibility of the witnesses by referring to appellants as "perhaps the most intensely interested witnesses that were called in the case." Understood in its proper sense, and as we assume that the jury would understand the expression in the course of the charge, no harm was done to the appellants. It is said that the expression is harmful because the judge in the same connection said "that, as a rule, a witness who is interested is not likely to be as candid or fair as a disinterested witness"; that would seem to be the statement of a well-known fact. In this

case, where a number of state policemen were called, it may be said generally, that the policemen were interested to justify the raid which they made, and the "wrecking"—as the evidence calls it,—of valuable property described in the record. A number of other witnesses also testified. Certainly, of all who testified, the appellants were the persons most interested in the result of the trial, and as we read the charge, that was all the judge said and what the jury would understand by it; the jury was not restricted in the consideration of appellants' evidence within the condemnation of Com. v. Pipes, 158 Pa. 25, 30.

The assignments of error are dismissed, the judgment is affirmed* and the record is remitted to the court below and it is ordered that Clyde Knittle, appellant in No. 12 February Term 1927, appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.

---

*Similar orders affecting the other appellants represented were made and filed at Nos. 13, 14 and 15, February Term 1927.