## McManus et ux. v. Acklin et al.

Before Gibson, P. J., Carson and Cummins, JJ.

*Michael A. Hanna* and *David H. Weiner*, for plaintiffs.

*S. E. Murphy* and *Crumrine & Pireaux*, for defendants.

GIBSON, P. J., August 18, 1947.—Plaintiffs filed their bill alleging that Margaret Acklin, one of defendants, on June 7, 1928, was the owner of a tract of land situate in Deemston Borough, Washington County, containing 129 acres, and on that date entered into an agreement with J. Harry King, C. Ward Beecher, Thos. H. Myers and R. E. Crumrine, covering the entire 129 acres, which agreement was recorded, wherein it was provided that, in consideration of certain rents and covenants in the agreement, the owner "has granted, demised and let unto the party of the second part, for the sole and only purpose of drilling and operating for petroleum oil, or gas, and the right of way for pipe lines, all that certain tract of land situate in Deemston Borough, Washington County and State of Pennsylvania, bounded and described as follows"—the entire tract is described as containing 129 acres—and then follows, "To Have and

To Hold said premises, for the said purposes only, unto the party of the second part, for, during and until the full term of two years (2) next ensuing the day and year above written, or while oil or gas is found in paying quantities." As a consideration the second party was to deliver one eighth of all petroleum discovered and produced and was to pay one eighth of all moneys received from the sale of gas. The agreement also provided for an allowance of 200,000 cubic feet of gas per annum without cost by laying lines, etc. A failure to perform the covenants by the party of the second part rendered the contract null and void, and by the terms of the agreement all of the conditions extended to the heirs, executors and assigns of the parties.

By various assignments and transfer, Tony Ross and Mary Ross, his wife, became entitled to all of the rights which Margaret Acklin had under said agreement on and after September 27, 1946. By various assignments and transfers, the rights of the second parties became vested in Thomas H. Myers and Walter I. Campbell on November 12, 1943.

A well was drilled on this 129 acres (not within the boundary lines of the 18 acres hereinafter referred to) and has since produced oil and gas for which certain royalties have been paid to Margaret Acklin to September 27, 1946, and thereafter to Tony Ross and Mary Ross.

Plaintiffs' bill alleges that on April 20, 1929, Margaret Acklin conveyed 18 acres on this tract of land to Daniel Baysinger, which deed was duly recorded. This deed contained the following provision:

"Excepting and Reserving therefrom all the coal of the Pittsburgh or River Vein, together with mining rights appurtenant thereto, as heretofore conveyed, excepted or reserved subject to any existing oil and gas leases and grants of rights of way, and subject to any and all public roads."

Plaintiffs further allege that Daniel L. Baysinger conveyed this land (excepting one acre which had been previously sold by him) to plaintiffs by deed dated April 17, 1943, which was recorded May 14, 1943.

Subsequent to that time, plaintiffs demanded the rents and royalties accruing under the agreement after April 17, 1943, which demand has been refused. This demand was for 18/129ths of the royalties or rents received after that date, and plaintiffs pray for an accounting thereof, claiming that the 129-acre tract as a whole was bound by the lease or agreement upon which a rental was being paid and that they, having acquired a portion of this tract which was burdened with or subject to the terms of this agreement, were entitled to the same portion of the rental or royalty.

Defendants dispute this conclusion and have filed preliminary objections, claiming that under the allegations in the bill, supplemented by the recorded deeds and other agreements therein referred to, plaintiffs' bill does not disclose any cause of action or any right of plaintiffs to any part of the rents or royalties.

The question, therefore, is whether the rents and royalties paid under the terms of the agreement are truly a rent such as would be paid for the use and occupancy of real estate for a fixed time, or are they delayed payments arising from a sale of the oil and gas in the strata underlying the 129 acres. The decisions regarding questions of this type arising from the business of producing oil and gas in Pennsylvania have not been uniform or always consistent. The courts were dealing with a new subject and a new business. The transitory nature of oil and gas as compared with quarries and iron and coal mines require somewhat different approaches to the subject. In the application of old rules regarding purchases, leases and licenses, there were unforeseen difficulties covering a period of almost 90 years since the first oil wells in Pennsylvania were drilled. During that period also there has been

a considerable change in the form of agreements entered into between the owner of the land and those who proposed to explore for and produce oil and gas.

From an examination of these cases they appear to be divided into three classes. It is well settled in this State that oil and gas contained in or obtained through the land are minerals: Stoughton's Appeal et al., 88 Pa. 198; Westmoreland, etc., Natural Gas Co. v. De-Witt, et al., 130 Pa. 235; Gill v. Weston, 110 Pa. 312; Marshall v. Mellon et al., 179 Pa. 371.

This mineral is confined in certain underlying strata and is a part of the land in the same manner as underlying coal or other minerals. It may be rented in the technical sense for a limited time or limited as to quantity, either at an express fixed rent or at a certain charge for that which is produced at the surface. In this event it is an incorporeal right. Or the strata or the substance in the strata may be sold and severed from the surface, in which case there is a corporeal grant.

The three classes mentioned into which the cases may be divided, are: First, those based on contracts, which refer merely to a right or license to explore for a limited time for oil and gas, and, if found, to take what may be produced within that time after it has been brought to the surface. An example of that type of case is Funk v. Haldeman et al., 53 Pa. 229. This is recognized as an authoritative case in Hicks v. American Natural Gas Co., 207 Pa. 570 (579); Kelly v. Keys, 213 Pa. 295; and Hamilton et al. v. Foster, 272 Pa. 95 (102).

The second class consists of those dealing with contracts granting the right to enter on land and there explore for oil and gas, and, if found, remove the oil and gas to the exhaustion of the strata underlying the land. This is more than a license. It has the effect of vesting in the grantee the ownership of the oil and gas not only of what he produces and brings to the

surface within a limit of time but an ownership of it in place which he can pursue to exhaustion and has the effect of a sale of the oil and gas in place: Blakley et al. v. Marshall, 174 Pa. 425; McIntosh v. Ropp, 233 Pa. 497; Brunot's Estate, 46 Pitts. L. J. 105; Banfield's Estate, 9 Wash. Co. 59; Ealy v. Sprowls, in the Court of Common Pleas of Washington County, no. 120, February term, 1933; Barnsdall v. Bradford Gas Co., 225 Pa. 338; Hutton v. Carnegie Nat. Gas Co., 51 Pa. Superior Ct. 376.

It appears in these cases that regardless of the name given to the agreement or its technical form, if it empowers the lessee to remove all the oil or gas in the premises in consideration of giving the lessor a certain percent thereof, the legal effect is a sale of a portion of the land and payment of rent or royalty is but a deferred payment of the purchase price.

The third class comes somewhere between the first and second and cannot be well defined. The rights of the grantee are not considered as real estate although more than a mere license and cover those cases which are a lease for a limited number of years. See Brown v. Beecher et al., 120 Pa. 590; Nesbit v. Godfrey et al., 155 Pa. 251; Irwin v. Hoffman et al., 319 Pa. 8. And perhaps in between that type of cases which grant merely a license and those which constitute a sale should be included Wettengel v. Gormley, 160 Pa. 559 and 184 Pa. 354. In this last case the lease was for a definite term of 15 years. The oil and gas operator engaged actively on the premises but found production only on part of the leased premises. James Gormley, the lessor, had, subsequent to the lease, by his will, divided his 600-acre tract of land into three parts, one of which was given to each of his three children. Those whose purparts produced no oil or gas sought and secured a per acre division of the rents and royalties. As we pointed out, there was a lease for a limited time and no clause for a longer continuance. The lease was

a mere chattel and, upon oil or gas being found, produced certain returns and these were distributed, after allowing certain preferences to the owners of the land on which the wells were located, according to the acreage of the several purparts. After a careful examination of the Supreme Court's opinion, we do not see how they could consistently arrive at this conclusion. Under the authorities (Banfield's Estate, 9 Wash. Co. 59; Birdsall v. Delaware & H. Co., 244 Fed. 594; Gardner's Estate, 199 Pa. 524) upon the death of the lessor, the rents and royalties being personalty would be payable to his executor or administrator and be distributed either according to the will or according to the intestate laws. This appears to be recognized by this decision (p. 362). It may be the Supreme Court exercising its broad equitable powers by-passed the personal representative in the distribution of rents and royalties and made the distribution according to the acreage of the purparts because testator had made such a division of his real estate by his will. The Supreme Court say (p. 362):

"As between themselves, the division of the surface was absolute; but as to the holder of the leasehold, each took the part devised to him, subject to the common burden which had been put upon the entire body of the land as a single undivided tract containing six hundred acres, more or less. As the lease covered all the land, so the rent may be said to issue from each and every part of it. The royalties belonged to the owners of the six hundred acres, and not to the owner of any subdivision of it. But as we have seen the royalties were personal. They were not disposed of by Gormley's will. They were not even referred to in it. The intestate laws must in such case be looked to for the disposition of this very considerable part of his estate. The children hold together all the acreage that is covered by the lease, and each should receive such share of the royalty as his or her share of the land bears to the whole

tract covered by the lease. It does not matter in what acre or hundred acres the wells may be situated. The royalties are not payable by the acre, nor by the farm into which the surface may be divided, but upon the total production, wherever within the six hundred acres the production may take place." In any event, it is clear that in Wettengel v. Gormley the contract of lease did not constitute a sale of real estate.

The agreement between Margaret Acklin and J. Harry King et al., as we have pointed out, was for a term of two years "or while oil or gas is found in paying quantities". The time provided for in addition to the two years is unlimited and permits the operator to continue until the oil or gas under the 129 acres has been exhausted. By the terms of this agreement it constitutes a sale of the oil and gas underlying the 129 acres and gives the right to take all of it, no matter how long a time may be required to accomplish this. Consequently, when Margaret Acklin conveyed to Daniel Baysinger the 18 acres, more or less, subject to the existing oil and gas leases, the oil and gas under the 18 acres had been sold and were no longer under the ownership of Margaret Acklin and could not pass by her deed, notwithstanding there was an obligation by the operators for oil and gas to pay Margaret Acklin the delayed payments of purchase money. The right to these delayed payments was a chose in action or personalty. In this situation Daniel Baysinger could not convey any rights to the oil and gas underlying that portion of land which he conveyed to plaintiffs.

For the reasons above set forth, we are of the opinion that plaintiffs have no claim on any royalty or rents payable for oil or gas underlying the surface of the 129 acres described in the agreement between Margaret Acklin and J. Harry King et al., and plaintiffs' bill must be dismissed.

And now, August 18, 1947, it is ordered and decreed that plaintiffs' bill be dismissed at the cost of plaintiffs.